**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:23-cv-24565-FAM**

**SHANNON OWENS,**

**Plaintiff,**

**v.**

**UNIVERSITY OF MIAMI,**

**Defendant.**
**______________________________________/**

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant, University of Miami (the "University"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and L.R. 5.1 and 7.1, hereby moves to dismiss the claims asserted against it by Plaintiff, Shannon Owens ("Owens").

## FACTUAL ALLEGATIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Owens alleges that, on or around September 15, 2021, she began working as a Unit Secretary at UHealth Tower, a 500-room hospital that is part of the University of Miami Health System. (Am. Compl., DE 1-4 ¶¶ 8-9). She alleges that, "[t]o ensure patient safety and help prevent the spread of COVID-19 during the pandemic, the Hospital maintained a facemask policy that applied to all staff, including Owens. (*Id.* ¶ 10).

Owens alleges that she is "a qualified individual with a disability" (1) because she "has a severe contact allergy to latex, irritants and elastic components" which, when triggered, inhibits her ability to breathe, and (2) because she has "chronic, panic-inducing claustrophobia." (*Id.* ¶¶ 11-14). She alleges that, on or around September 26, 2021, she disclosed her alleged health issues and provided a medical doctor's note to her supervisor. (*Id.* ¶¶15-16). She states that her supervisor granted her an informal accommodation by allowing her to wear a fabric facemask instead of one containing latex and elastic components. (*Id.* ¶¶ 15-17). Owens alleges that she wore a cloth mask until late December 2021 without issue. (*Id.* ¶ 17). However, in response to the surging Omicron variant, in late December 2021, the Hospital updated its employee mask policy, effective December 29, 2021, requiring employees to wear N95 respirators at all times. (*Id.* ¶¶ 18-20). A

true and correct copy of the University's updated mask policy, as referenced in Plaintiff's Amended Complaint, is attached hereto as Exhibit A.[1] In pertinent part, it provided that "**Patient-facing faculty and staff** must wear an N95 respirator (3M 1860/Halyard N95 Fluidshield Duckbill) in addition to eye protection in all clinical settings." (Emphasis in original).

Owens alleges that, on December 29, 2021, she was informed that all employees, including her, were required to wear N95 masks. (*Id.* ¶¶ 29-30). Fearing an adverse reaction from wearing an N95 mask, Owens clocked out and left work. (*Id.* ¶ 33). On January 4, 2022, Owens was contacted by her supervisor, who sought clarification as to her inability to wear N95 masks and requested medical documentation. (*Id.* ¶ 38). Owens alleges that she submitted a formal request for accommodation with updated medical documentation provided by her physician. (*Id.* ¶ 41). A true and correct copy of Owens' request for accommodation under the Americans with Disabilities Act ("ADA") is attached hereto as Exhibit B and properly may be considered by the Court.[2] In pertinent part, Owens' healthcare provider noted that Owens' specific impairment is that she has claustrophobia as well as contact allergic dermatitis to surgical and N95 masks. The only accommodation requested by Owens as set forth by her healthcare provider was that she "be allowed to wear cloth mask with a face shield." (*Id.*).

---

[1] Although a document is outside the four corners of the complaint, where it is referenced in and central to the complaint, the court may consider it without converting the motion to dismiss to a motion for summary judgment. *Huete v. Bank of New York Mellon*, No. 17-CV-20371-KING, 2017 WL 1499241, at *1 n.2 (S.D. Fla. Apr. 25, 2017). As the Court explained in *Baker v. NCL America, LLC*, No. 1:19-cv-24442-JLK, 2020 WL 6290161, at *2 n.1 (S.D. Fla. Oct. 27, 2020):

> An exception applies where the court may consider a document referenced or attached to the pleadings where it is "(1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged. … [A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed…." *Day v. Taylor*, 400 F. 3d 1272, 1276 (2005) (citing *Horsley v. Feldt*, 304 F. 3d 1125, 1136 (11th Cir. 2002)). Attached documents fitting those requirements may be used by the court when considering a Rule 12(b)(6) Motion to Dismiss or a Rule 12(c) Motion for Judgment on the Pleadings. See Horsley at 1134-35.

[2] *See* fn. 1.

Owens alleges that, on February 10, 2022, the Hospital denied her accommodation to wear a cloth mask but that it granted her an alternative accommodation to wear an approved hypoallergenic N95 particulate respirator mask and required her to return to work within 4 days. (Am. Compl., DE 1-4 ¶¶ 43-44). A true and correct copy of the University's February 10, 2022 notification to Owens is attached hereto as Exhibit C and properly may be considered by the Court.[3] In pertinent part, the letter to Owens from the University's Manager, Employee Accommodations, stated:

> On January 5, 2022, your management team reached out to the Office of Workplace Equity and Inclusion to advise of your potential need for a workplace accommodation. Specifically, your department advised that you were unable to wear an N95 mask, as required by the University's policies and recommended by the Center for Disease Control and Prevention (CDC) related to Covid-19 safety protocols in a hospital setting. Thereafter, on January 24, 2022 and January 27, 2022, you confirmed that you were unable to wear the N95 masks and requested to wear a cloth mask with a face shield. We met to discuss potential accommodation options. Such a request must be evaluated in accordance with the Americans with Disabilities Act ("ADA") to determine whether the request can be reasonably accommodated.
>
> Please note that, under the ADA, an employer need not eliminate an essential function of a position (i.e., the purpose or fundamental duty of the position; reduction of productivity standards applied to all employees with and without disabilities, etc.) Additionally, reasonable accommodation is not required if it would cause undue hardship to the employer or pose a direct threat to the health or safety of the employee or others that cannot be eliminated or reduced by the proposed accommodation.
>
> As a Unit Secretary, several essential functions of your position require you to be onsite to fulfill team and patient-facing duties. Based on our meetings, the medical documentation from your healthcare provider, and in coordination with your department, your request to wear a cloth mask with a face shield is denied. However, the following alternative accommodation is APPROVED:
>
> **<u>Face Mask Alternative</u>**
> - You are approved to wear a Hypoallergenic N-95 mask, specifically named "Harley NIOSH Approved Hypoallergenic N95 Particulate Respirator Mask" while onsite.
> - Your department ordered the above mentioned mask from Senior.com, and it is available at your worksite.
> - You are subject to a mask fitting test to ensure the mask complies with the University's Covid-19 safety protocols.

---

3 *See* fn. 1.

- You must report back onsite effective February 14, 2022.
- If you fail to report onsite on February 14, 2022, we will assume from your absence that you have voluntarily resigned your employment with the University.

(Ex. C). Owens signed an Acknowledgment, stating, *inter alia*, that she understood and accepted the terms of the February 10, 2022 letter, that she accepted the accommodations granted and considered them to be reasonable and that she understood that she would be required to adhere to policies and procedures governing her employment, including department requirements concerning productivity and attendance. (*Id.*).

Owens alleges that she returned to work as required but that every mask that the Hospital had in its possession caused her to have allergic reactions, including a clear mask which, although it did not cause breathing problems, caused contact dermatitis. (Am. Compl., DE 1-4 ¶¶ 45-48). She alleges that she suffered an allergic reaction on February 27, 2022 and went to the Emergency Room. (*Id.* ¶¶ 53-55). She alleges that she contacted her supervisor and explained that she could not return to work without a hypoallergenic facemask. (*Id.* ¶ 56). Owens alleges that, on March 3, 2022, she also contacted Dr. Lamar, the Executive Director of Occupational Health, Safety and Compliance, and complained that other similarly situated, non-disabled employees were permitted to wear KN95 masks instead of the N95 masks that were required by the Hospital and that she was being singled out in being required to wear an N95 mask. (*Id.* ¶¶ 57-59). Nowhere in her Amended Complaint does Owens identify any similarly situated, non-disabled employee who allegedly received more favorable treatment than she did. Nor does Plaintiff anywhere allege that she requested she be permitted to wear a KN95 mask or that use of a KN95 mask would have been a reasonable accommodation for what she claims is her disability.

Owens alleges that, on March 8, 2022, she was issued a written reprimand for not showing up to work and that, on March 16, 2022, she applied for 6 months of personal leave, up through September 7, 2022. (*Id.* ¶ 61). She further alleges that, on March 22, 2022, the Hospital granted Owens' request for medical leave, but only through April 8, 2023. (*Id.* ¶ 64). A copy of the University's March 22, 2022 communication to Owens is attached hereto as Exhibit D and properly may be considered by the Court.[4] In this letter, the University advised Owens that, while she was not eligible for FMLA leave, she was eligible for general medical leave and must have

---

[4] *See* fn. 1.

her healthcare provider complete and submit a certification form no later than April 6, 2022. Owens submitted the form completed by her healthcare provider and a copy thereof is attached hereto as Exhibit E, which properly may be considered by the Court.[5] Owens' healthcare provider certified on the form that Owens was not able to perform any of her job functions due to "respitory [sic] environmental conditions trigger." (Ex. E). In a communication to Owens from the University on April 8, 2022, a copy of which is attached hereto as Exhibit F, the University advised Owens that her request for personal leave was granted, but only through April 8, 2022. This communication, as referenced in Owens' Amended Complaint, properly may be considered by the Court.[6] The University stated in this communication to Owens that her request for leave beyond April 8, 2022 has been denied, explaining:

> Your Department cannot extend your leave any further due to the significant undue hardship your absence is causing the Department. As a Unit Secretary, you fulfill a critical role. Your Department needs your position filled to meet its operational needs. As noted above, as of the date of this letter, you have not returned to work since you went out on a continuous leave beginning March 4, 2022. Given the considerable amount of leave taken since January 2022, affording you any more time off would pose an extensive burden on your Department. As a result, please note that your continued absence is considered unauthorized and unapproved.
>
> Please note that, due to the extensive burden your absence is causing, your Department will commence steps to find a replacement for your position. Your Department is willing to keep you employed in your position while the Department searches for a replacement. Please note that, if a replacement has been identified before you have been cleared to return to work and perform your essential job functions, you will not be reinstated to your position. However, please note that, whether a replacement has been identified or not, the Department cannot hold your position open indefinitely.

(Ex. F).

Owens alleges that, on July 15, 2022, she was terminated from her position at the University. (Am. Compl., DE 1-4 ¶ 68). A true and correct copy of the July 15, 2022 termination letter is attached hereto as Exhibit G and properly may be considered by the Court.[7] In pertinent part, the letter stated:

---

5 *See* fn. 1.

6 *See* fn. 1.

7 *See* fn. 1. *See also Chambers v. Cherokee Cty.*, 743 Fed. Appx. 960, 963 n.1 (11th Cir. 2018) (noting that the district court properly6 considered exhibits attached to defendant's motion

> As a review, you commenced your employment with the University on September 13, 2021. You were provided with a leave of absence as a reasonable workplace accommodation under the Americans with Disabilities Act ("ADA"). Accordingly, the leave of absence was designated as a *personal leave* in accordance with the University's *Personal Leave* policy. Your personal leave of absence commenced on January 1, 2022 and ended February 16, 2022. Soon thereafter, you were approved for additional leave beginning on March 4, 2022 and ending April 8, 2022.
>
> On April 7, 2022, you provided a certification form completed by your health care provider in which a leave of absence was recommended ending September 2022. On April 20, 2022, you were notified that due to the undue hardship, your department was unable to extend your leave. Thereafter, you were informed that your department would begin recruiting for your position, and during this period of recruitment you would be permitted to remain in the role until a candidate was identified.
>
> On July 11, 2022, Ms. Phyllis Dorcely, Leave and Accommodations Coordinator, notified you that a candidate had been selected and requested information regarding your return to work. On July 14, 2022, you were contacted by Ms. Dorcely regarding whether you could return to work. You advised Ms. Dorcely that you would not be able to return.
>
> This serves as formal notice of your separation from the University of Miami, effective today.

Owens alleges that, on or around April 26, 2023, she dual filed an Amended Charge of Discrimination and retaliation with the Florida Commission on Human Relations ("FCHR and the United States Equal Employment Opportunity Commission ("EEOC"). (Am. Compl., DE 1-4 ¶¶ 70-71). As to her federal claims under the Americans with Disabilities Act ("ADA"), Owens alleges that the EEOC has issued her a Right to Sue and, thus, she has exhausted her administrative remedies. (*Id.* ¶ 71). As to her claims under the Florida Civil Rights Act ("FCRA"), Owens alleges that, because more than 180 days has elapsed since she filed her charge with the FCHR, she has exhausted her administrative remedies. (*Id.* ¶ 72). A true and correct copy of Owens' Amended Charge of Discrimination is attached hereto as Exhibit H.[8] While the Charge does indicate that it

---

to dismiss, including the plaintiff's termination notice, pursuant to the incorporation by reference doctrine.

[8] *See* fn. 1. It also is well established that the Court may consider the EEOC Charge in ruling on the motion to dismiss because it is central to Plaintiff's claims and its authenticity is undisputed. *See Booth v. City of Roswell*, 754 Fed. Appx. 834, 837 (11th Cir. 2018). *See also Hodge v. Orlando Utilities Com'n*, No. 609-CV-1059-ORL19DAB, 2009 WL 5067758, at *4 (M.D. Fla. Dec. 15,

was dual filed with the EEOC and the FCHR, the narrative contained in the Charge nowhere alleges that Owens is asserting a claim under the FCRA. Indeed, the Charge states clearly that Owens is asserting a claim *only* under the ADA: "I believe I was discriminated and retaliated against for after engaging in a protected activity in violation of the Americans with Disabilities Act of 1990, as amended."

**CLAIMS ASSERTED BY PLAINTIFF**

Owens has asserted four separate claims against the University: In Count I, Owens attempts to assert a claim for Handicap Discrimination under the FCRA. In this claim, she alleges that the University discriminated against her by subjecting her to adverse employment actions on the basis of her disability while treating her similarly situated non-disabled colleagues more favorably. In Count II, Plaintiff attempts to assert a claim for retaliation under the FCRA. Here, Owens alleges that she engaged in protected activity by opposing the University's discriminatory practices against her on the basis of her disability and was retaliated against as a result. In Count III, Plaintiff attempts to assert a claim for Disability Discrimination under the ADA, asserting, as in Count I, that she was subjected to adverse employment actions while other non-disabled, similarly situated employees were treated more favorably. Finally, in Count IV, Plaintiff attempts to assert a claim of retaliation under the ADA, alleging that she engaged in protected activity by complaining about disability discrimination and that the University retaliated against her for so doing.

**ARGUMENT IN SUPPORT OF MOTION TO DISMISS**

**I. Legal Standard on a Motion to Dismiss**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a complaint "must consist of more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Lattimore v. Wells Fargo Bank, N.A.*, 590 Fed. Appx. 912, 913 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). A "'formulaic recitation of the elements of a cause of action will

---

2009) (collecting cases for the proposition that a district court may consider EEOC Charges "without converting the instant motion to dismiss into a motion for summary judgment"). In addition, "the Court may take judicial notice of the contents of relevant public records, which include EEOC Charges and Right to Sue Letters." *Hodge*, 2009 WL 5067758, at *4 n.3 (collecting cases).

not do.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

The Court must accept the plaintiff's well-pleaded facts as true but need not accept mere legal conclusions. *Brinson v. Welsh*, 709 Fed. Appx. 582, 584 (11th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678). Moreover, "a court is not bound to 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Speaks v. Health Sys. Mgmt., Inc.*, No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649, at *2 (W.D.N.C. Aug. 17, 2022) (quoting *Veney v. Wyche*, 293 F. 3d 726, 730 (4th Cir. 2002)). "When the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail." *Id.* (quoting *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 984 n.1 (D. Md. 2002)).

"Plausibility is the key, as the 'well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (quoting *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), in turn quoting *Twombly*, 550 U.S. at 570). "In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief." *Gavilan v. Balans, L.C.*, No. 14-22791-CIV, 2014 WL 6979625, at *1 (S.D. Fla. Dec. 9, 2014) (citing *Iqbal*, 556 U.S. at 678).

## II. Plaintiff Failed to Exhaust her Administrative Remedies Under the FCRA and, Accordingly, Counts I and II Should be Dismissed *With Prejudice*

As a threshold matter, Counts I and II of the Amended Complaint - - Plaintiff's claims of discrimination and retaliation in alleged violation of the FCRA - - must be dismissed because she failed to exhaust her administrative remedies. As noted above, Plaintiff's Amended Charge of Discrimination, Exhibit H hereto, was duly filed with both the EEOC and the FCHR. However, nowhere in the Charge is there any allegation that the University has violated the FCRA. In fact, the Charge alleges *only* that the University violated the ADA.

In a case on all fours with this one, Florida's Fourth District Court of Appeal very recently affirmed the dismissal *with prejudice* of claims of discrimination and retaliation under the FCRA because the former employee's charge of discrimination did not put the former employer or the FCHR on notice that the former employee was claiming violation of the FCRA. *Belony v. North Broward Hospital Dist.*, No. 4D2022-3061, ___ So. 3d ___, 2023 WL 7172299 (Fla. 4th DCA Nov. 1, 2023). As in this case, the plaintiff in *Belony* dual filed her charge of discrimination with

the EEOC and the FCHR but did not allege a violation of the FCRA in the body of the charge. The trial court dismissed the case *with prejudice* and the appellate court affirmed, explaining:

> Following his termination, Belony filed a charge of discrimination against Broward Health with the United States Equal Employment Opportunity Commission ("EEOC"). On the EEOC Charge of Discrimination form, Belony checked the Fair Employment Practices Agency ("FEPA") box and stated he wanted to file the charge with both the EEOC and the Florida Commission on Human Rights ("FCHR"). In addition to checking the "sex" and "retaliation" boxes, the charge included a narrative recounting the alleged discrimination which Belony suffered from his former manager's actions at Broward Health. The narrative concluded with the following relevant statement: "Claimant believes that he has been discriminated against in violation of Title VII of the Civil Rights Act of 1964." It is undisputed that the charge specifically referenced federal law only.
>
> * * *
>
> The dispute on appeal is whether the discrimination charge sufficiently put the FCHR and Broward Health that Belony was alleging an FCRA violation when the charge only referenced Title VII and the Civil Rights Act of 1964. Belony argues that notice was sufficient, reasoning "if the FEPA box is checked and the charging party indicates that the charge should be dual filed with another agency that is all that is required." Broward Health counters the notice was insufficient, reasoning "[i]t is axiomatic that an employer cannot be placed on notice that a claimant is claiming a violation of the FCRA when his charge only asserts a violation of federal law." We agree with Broward Health.
>
> * * *
>
> Our plain reading of section 760.11, Florida Statutes (2019), compels us to conclude that the statutory prerequisite to bringing a civil lawsuit for an FCRA violation is premised on the claimant asserting a violation in a form sufficient to put the employer on notice that the claimant is alleging a violation of Florida law. … Merely asserting a violation of federal law in a charge of discrimination and dually filing the charge with the FCHR is insufficient to satisfy the statute's requirements because "a cause of action founded on a federal statute is not the same cause of action as one founded on a state statute, even where both statutes apply to the same transaction or occurrence." (citation omitted).

2023 WL 7172299, at *1-2. In short, the appellate court ruled that, because the charge of discrimination failed to make any reference to a state law violation, "the trial court correctly determined it lacked subject matter jurisdiction because [the plaintiff] failed to exhaust his administrative remedies under the FCRA." *Id.* at *2.

"In the absence of contrary authority from the Florida Supreme Court, this Court is bound by decisions of Florida's intermediate appellate courts on issues of Florida law." *State Farm Mut. Auto. Ins. Co. v. Complete Care Centers, LLC*, No. 6:20-cv-1240-WWB-EJK, 2021 WL 2946280, at *2 (M.D. Fla. July 12, 2021) (citing *Nunez v. Geico Gen. Ins. Co*., 685 F. 3d 1205, 1210 (11th

Cir. 2012)). Owens' failure to exhaust her administrative remedies to assert a disability discrimination and/or retaliation claim under the FCRA is not subject to cure. Pursuant to Fla. Stat. § 760.11(1), a complaint with the FCHR must be filed within 365 days of the alleged violation. Owens was fired in July 2022 and she allegedly was denied a reasonable accommodation before that. Thus, any alleged violation of the FCRA is time-barred. Accordingly, Counts I and II properly should be dismissed *with prejudice.*[9]

### III. Plaintiff Fails to State a Claim for Disability Discrimination Under Both the ADA and the FCRA[10]

To state a claim for discrimination under the ADA, a plaintiff "must allege the elements of a *prima facie* case of discrimination, including that [she] (1) is disabled, (2) is a qualified individual, and (3) was unlawfully discriminated against because of his disability." *Anderson v. Werner Enterprises, Inc.*, No. 8:18-cv-48-T-36JSS, 2018 WL 3729043, at *3 (S.D. Fla. Aug. 6, 2018) (citing *Smith v. Miami-Dade Cty*, 621 Fed. Appx. 955, 959 (11th Cir. 2015)). "In order to state a claim of disability discrimination under the ADA, Plaintiff must allege facts that plausibly suggest Defendant discriminated against her because of her disability, either by subjecting her to less favorable treatment than similarly situated employees without a disability or by failing to reasonably accommodate [her] disability." *Gadsden v. Publix Supermarket*, No. 2:20-CV-00115-SCJ-JCF, 2021 WL 2548702, at *3 (N.D. Ga. Jan. 4, 2021). Plaintiff's Amended Complaint fails to contain factual allegations sufficient to satisfy these elements.

---

[9] Florida state courts treat a failure to exhaust issue as defect that deprives the court of subject matter jurisdiction. *See Pushkin v. Lombard*, 279 So. 2d 79, 82 (Fla. 3d DCA 1973) (recognizing that the "failure to exhaust administrative remedies ... goes to the very subject matter jurisdiction of the court to hear a matter"). In the federal courts, however, a failure-to-exhaust issue is normally considered an affirmative defense, not a challenge to the Court's subject matter jurisdiction. *Jones v. Bock*, 549 U.S. 199, 211–17, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir.2008). Nonetheless, the Eleventh Circuit has found failure to exhaust to be a matter of abatement which is properly raised in a motion to dismiss as a "matter of judicial administration." *Id.* at 1375.

[10] Claims brought under the FCRA are analyzed under the same framework as claims brought under the ADA. *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000); *Lewis v. Union Home Mortgage Corp.*, 22-13976, 2023 WL 6568123, at *2 (11th Cir. Oct. 10, 2023). Accordingly, even had Owens properly exhausted her administrative remedies under the FCRA, which she clearly did not do, such claims still would fail as set forth herein.

### A. Plaintiff Does Not Have a Disability Covered by the ADA

The Amended Complaint fails to state a claim under any theory because Plaintiff has not sufficiently alleged that she has a disability as recognized by the ADA (nor can she do so) and, thus, she is not protected by the provisions of the ADA. A disability within the meaning of the ADA is a condition that "substantially prevents a person from engaging in one of the major life activities of such individual." 42 U.S.C.A. § 12102(1)(A). Owens alleges that conforming with the University's mask policy, which she admits was enacted to prevent the spread of COVID-19 in the Hospital during the Omicron variant surge, inhibited her ability to breathe "when latex and certain irritants trigger[ed] Owens' allergy." (Am. Compl., DE 1-4 ¶¶ 11-12, 28-30). The courts to have considered the issue uniformly have determined that an allergy that is triggered only by exposure to certain allergens, which trigger can be avoided, does not meet the ADA's definition of disability. For example, in *Watson v. Hughston Sports Med. Hosp.*, 231 F. Supp. 2d 1344, 1349 (M.D. Ga. 2002), the plaintiff, a registered nurse, brought a claim against a hospital under the ADA for failure to hire her because of her allergy to latex. The court found that plaintiff did not have a disability, explaining, first, that, in order to be covered by the ADA, the plaintiff's impairment must substantially limit one or more of her major life activities:

> In determining whether someone's "major life activities' have been 'substantially limited' because of a 'physical or mental impairment,' the courts have sought guidance from the regulations promulgated by the Equal Employment Opportunity Commission ("EEOC")." *See* 42 U.S.C. § 12116 (mandating that the EEOC issue such regulations. These regulations provide that "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The regulations define "substantially limits" as being "unable to perform a major life activity" or "significantly restricted as to the condition, manner or duration" in which he or she performs a major life activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii); *see also Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 691, 151 L. Ed. 2d 615 (2002) ("[S]ubstantially" in the phrase "substantially limits" suggests "considerable" or "to a large degree."). Whether an individual's ability to perform a major life activity is "substantially limited" is to be determined by examining three factors: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or expected such impact, of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

231 F. Supp. 2d at 1349. The court then went on to explain that the allergy claimed by the plaintiff to constitute a disability was not, in fact, a disability under the ADA:

> Breathing is obviously a "major life activity" under anyone's definition. However, applying the above factors to determine whether Plaintiff's breathing has been "substantially limited" by her allergy, the Court must conclude that Watson has no such substantial limitations and is therefore not disabled for ADA purposes. … Plaintiff's allergy, while permanent, is dormant unless activated by exposure to latex. In other words, ***her "impairment" does not restrict her from engaging in the major life activity of breathing. It simply has the possibility of doing so if she exposes herself to latex.*** Just as people who are allergic to bees are not in danger of a reaction until they are stung, Watson does not suffer any adverse effects because of her allergy to latex unless and until she comes in contact with it. Similarly, the permanent or long term impact of Watson's allergy to latex appears minimal, as long as she avoids contact with the substance. (Emphasis added).

*Id.* at 1349-50. So, too, the impairment that Owens claims in this case - - one that is caused by exposure to latex and elastic and, *when triggered by wearing an N95 mask*, affects her breathing - - does not restrict Owens from engaging in the major life activity of breathing but simply has the possibility of doing so if she exposes herself to masks containing latex and elastic. *See also McLorn v. Community Health Servs*., 456 F. Supp. 2d 991, 996-997 (S.D. Ill. 2006) (employee's severe allergic reaction emanating from contact with synthetic latex were periodic episodes that did not constitute a disability under the ADA).

So too, to the extent that Plaintiff's Amended Complaint can be interpreted to allege that her allergy to latex and elastic substantially also limited another broad major life activity such as working, she still fails to allege that she has a disability that is recognized by the ADA. For example, in *Webb-Eaton v. Wayne Cty. Comm. College Dist.*, No. 12-14821, 2013 WL 3835208 (E.D. Mich. July 24, 2013), the plaintiff sued her educational institution, alleging that her latex allergy interfered with her ability to participate fully in its nursing curriculum and, thus, substantially limited the major life activity of learning. She alleged that the school failed to accommodate that allergy in violation of the ADA. The court dismissed the claim, explaining:

> "An impairment is a disability within the meaning of [the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). … The "major life activities" listed in 42 U.S.C. § 12102(2)(A), such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking," are all "basic functions, not more specific ones such as being an astronaut, working as a fire fighter, driving a race car, or learning by playing Big Ten basketball[,] *Knapp v. Northwestern Univ.*, 101 F. 3d 473, 481 (7th Cir. 1996). … While it may be true that Plaintiff's latex allergy hindered her ability to study nursing, there is no evidence – by way of allegation or otherwise – that Plaintiff's allergy prevented her from successfully completing a course of study in mathematics, teaching, social

> work, or any other field where direct exposure to latex would be a non-issue. … Put differently, Plaintiff's impairment does not rise to the level of being a disability within the meaning of the ADA because it does not limit her ability to learn "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).
>
> This Court decline[s] to define the major life activity of learning in such a way that the [ADA] applies whenever someone wants to "study nursing." *Knapp*, 101 F. 3d at 481. While the Court is aware that major life activities are defined in a more individualized manner as part of the "substantial limitation" analysis, "any narrowing of what constitutes learning for a particular individual occurs within reasonable limits" and coverage under the ADA is not "based on every dream or desire that a person may have." *Knapp*, 101 F. 3d at 481. Because Plaintiff has not presented a plausible claim that she is generally limited in her ability to learn, she has failed to adequately plead that she is disabled and therefore entitled to invoke the ADA's protections.

2013 WL 3835208, at *4-5. The same rationale applies in cases where, as here, the alleged impairment is episodic and where the plaintiff claims that the impairment interfered with the major life activity of working. The EEOC regulations "specifically provide that '[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'" 29 C.F.R. § 1630.2(j)()(i). Thus, the court in *Watson* ruled that the plaintiff/registered nurse who was not hired by a surgical hospital because she had a latex allergy was not substantially limited in her ability to work. She was just limited in her ability to work at that one hospital and, thus, she had no disability under the ADA. 231 F. Supp. 2d at 1350-51.

In *Slade v. Hershey Company*, No. 1:09-CV-00541, 2011 WL 13350910, 2011 WL 13350910 (M.D. Pa. Apr. 15, 2011), the plaintiff sought protection under the ADA based on her allergic reaction to peanuts. The court held that the plaintiff was not disabled because "she suffers no chronic, permanent decrease in lung function, but rather suffers a temporary, even if severe, reaction to peanuts following exposure." 2011 WL 13350910, at *9. "[P]laintiff could not continue to work in a way that brought her into direct contact with nuts, but this is not enough to prove she is disabled." *Id.* Thus, the plaintiff was not "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills[,] and abilities." *Id.* (citing 29 C.F.R. § 1630.2(j)(3)(i)). Similarly, in *Brown v. Sch. Bd. of Broward Cnty., Fla.*, No. 08-61592, 2009 WL 10667580 (S.D. Fla. Nov. 6, 2009), the plaintiff claimed to have a disability because he experienced breathing problems when exposed to mold and mildew. The court held that his impairment did not constitute a disability

because, under the ADA, an episodic impairment based on exposure to the allergen that triggers the reaction is not protected by the ADA.

"[A]n individual is not substantially limited in working just because he or she is unable to perform a particular job for one employer, or because he or she is unable to perform a specialized job or profession requiring extraordinary skill, prowess or talent; instead, the impairment must substantially limit employment generally." *Kristofor v. Schnibben*, No. 02 C 1859, 2003 WL 685819, at *2 (N.D. Ill. Feb. 26, 2003) (quoting *Webb v. Chote Mental Hosp*., 230 F. 3d 991, 998 (7th Cir. 2000)). In *Kristofor*, the plaintiff alleged that, due to her latex allergy, she was unable to perform her job as an orthodontist. The court held that the allergy was not a disability as defined by the ADA because, while her allergy impeded her ability to work in certain positions relating to the field of dentistry, it did not prohibit her from working in a broad class of jobs and did not substantially limit employment generally. *Id.* at *2. In short, "***[t]here is no support in the language of the ADA itself, the implementing regulations, or case law from any Circuit Court for the proposition that plaintiff's inability to perform a particular job under particular conditions constitutes a disability***." *Slade*, 2011 WL 13350910, at *10 (emphasis added).

Owens' episodic allergic reaction to certain allergens she encountered at the Hospital is not a disability protected by the ADA as it does not substantially impair her ability to breathe or to work generally. "At most, plaintiff has shown that she is significantly restricted in her ability to perform a single, particular job at a single, particular location. As the EEOC regulations expressly provide, such a showing does not suffice." *Chancellor v. Comans*, No. 1:04-cv-1290, 917-CAM, 2007 WL 9701366, at *4 (N.D. Ga. Aug. 16, 2007).

**B. Owens was not Entitled to any Accommodation Under the ADA**

Owens alleges that the University failed to provide her a reasonable accommodation for her allergy so as to allow her to continue working at the Hospital. While that allegation is patently false (and is belied by Exhibit C, attached to this motion, in which Owens' requested alternative accommodation was granted), to the extent that the Court must accept that allegation as true, it makes no difference to the outcome that is proper here. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual[.]" 42 U.S.C. § 12112(a). Moreover, the ADA requires covered entities to provide "reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual … unless such covered entity can demonstrate that the accommodations would

impose undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A). "***These statutory provisions establish that those who do not have a disability are not entitled to reasonable accommodations or any other protections afforded by the ADA***." *Webb-Eaton,* 2013 WL 3835208, at *3 (emphasis added). As set forth above, it is clear that the impairment described by Owens in her Amended Complaint is not a disability within the meaning of the ADA and, thus, even if the Court accepts Owens' conclusory allegation that the University failed to provide a reasonable accommodation for her allergy, she nevertheless was not entitled to any of the protections of the ADA.

**C. Plaintiff may not Proceed Under a Disparate Treatment Theory**

In addition, Plaintiff may not proceed under the theory that she was subjected to less favorable treatment than non-disabled, similarly situated employees. When a plaintiff proceeds on such a theory under the ADA, she is required to identify in her complaint those non-disabled comparators who she contends were treated more favorably than she was. *Novick v. Village of Wappingers Falls, New York*, 376 F. Supp. 3d 318, 342 (S.D.N.Y. 2019). Moreover, the plaintiff must allege facts to show that her comparators were similarly situated to her in all material respects. *Id.* The plaintiff's failure to identify any specific alleged comparators and to allege how the comparators generally referenced in the complaint are similar in all relevant respects fails to state a claim for disability discrimination. *Ruedas-Rojas v. McAleenan,* No. 19-CV-22522-MARTINEZ-OTAXO-REYES, 2020 WL 6143652, at *7-8 (S.D. Fla. June 1, 2020). That is the case here. Other than a single conclusory statement that non-disabled, similarly situated employees were treated more favorably than Owens, the Amended Complaint is devoid of any allegations as to the identity of such employees or how they were similarly situated. Accordingly, even if she was disabled, the Amended Complaint fails to state a claim under this theory.

**IV. Plaintiff Fails to State a Claim for Retaliation Under Both the ADA and the FCRA**

To state a viable claim for retaliation under the ADA, "a plaintiff must plausibly allege that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action. *Norris v. Honeywell Int'l, Inc.,* No. 8:22-cv-1675-CEH-TGW, 8:22-2210-CEH-MRM, 2023 WL 6256183, at *11 (M.D. Fla. Sept. 26, 2023). "To establish that a plaintiff engaged in statutorily protected expression for the purpose of an ADA retaliation claim, a plaintiff must show that he

"had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *Id.* at *12 (quoting *Weeks v. Harden Mfg. Corp.*, 291 F. 3d 1307, 1311-12 (11th Cir. 2002)). "A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable. *Id.* (quoting *Weeks*, 291 F. 3d at 1312). Objective reasonableness is evaluated based on caselaw precedent. *Id.*

**A. Owens Fails to Allege That She Engaged in Statutorily Protected Conduct**

Owens' retaliation claims are incredibly vague and lack any factual detail. She alleges, in conclusory fashion, that the University retaliated against her after she made a protected complaint regarding discrimination on the basis of her disability. (Am. Compl., DE 1-4 ¶¶ 93, 122). Her complaint, however, is devoid of any allegations regarding her making a protected complaint, with the exception that, in her general allegations, she alleges that, in March 2022, she reported to Dr. Lamar that several employees were wearing KN95 masks instead of the required N95 masks and that she was being singled out and treated less favorably when she sought to wear a different facemask than those required by the Hospital. *Id.* ¶¶ 57-59. She alleges in her retaliation claims, again in a wholly conclusory manner, that after she made her protected complaint, the University subjected her to different terms and conditions of employment than non-disabled employees, hindered her from being able to complete the basic functions of her job, demeaned, degraded and emotionally abused her, forced her to take personal leave and then terminated her employment. *Id.* ¶¶ 95, 124.

As a threshold matter, it is clear that, to the extent Owens believed that her opposition to the University's policy requiring all patient-facing employees, including her, to comply with its enacted mask policy to prevent the spread of COVID-19 in the Hospital constituted protected conduct under the ADA, such belief was not objectively reasonable as a matter of law. First, "[u]nder the ADA, an employee who cannot comply with a valid safety requirement for her position will 'not be considered qualified'" under the ADA. *Kinney v. St. Mary's Health, Inc.,* 76 F. 4th 635, 643 (7th Cir. Aug. 4, 2023) (quoting EEOC, *Applying Performance and Conduct Standards to Employees with Disabilities*, 2008 WL 4786697, at ¶ 23 (Sept. 25, 2008) (affirming judgment in favor of employer for failure to accommodate employee's inability to wear a face

mask based on his anxiety)). Second, Owens cannot claim that she engaged in protected conduct by complaining that other employees subject to the N95 mask mandate were wearing unauthorized KN95 masks where she has failed to identify a single similarly situated employee, failed to include any factual basis for the notion that such employees were similarly situated in all relevant respects and failed to allege that she should have been permitted to wear a KN95 mask, which was something she never requested. Finally, as discussed above, Owens has failed to allege any facts that she has a disability that is recognized as such under the ADA. "[B]ecause Plaintiff fails to allege any facts demonstrating that she has a disability, she prevents any inference that she had a good faith, objectively reasonable belief she was entitled to request accommodations." *Davis v. Wal-Mart Assoc., Inc.*, No. 5:22-cv-217-JSM-PRL, 2022 WL 21781947, at *8 (M.D. Fla. Dec. 16, 2022).

**B. Owens Failed to Allege the Requisite Causal Link Between her Alleged Protected Conduct and her Termination**

While the University concedes that Owens did, in fact, suffer an adverse employment action - - *i.e.*, the termination of her employment, she has not pled that her termination was causally related to her alleged protected conduct. In her complaint, Owens alleges that her "disability was, at a minimum, a motivating factor in Defendant's retaliatory employment decisions. (Am. Compl., DE 1-4 ¶¶ 96, 125). However, the ADA imposes a "but-for" liability standard while, in other types of discrimination claims such as gender discrimination, the standard is more permissive and the plaintiff may plead and prove that his protected class was at least a motivating factor in the employer's decision, even though other factors also may have motivated the decision. *King v. HCA*, 825 Fed. Appx. 733, 736 (11th Cir. 2020). The but-for causation standard requires that "Plaintiff show that the adverse employment would not have occurred in the absence of his protected activity." *Cunningham v. Univ. of Hawaii*, No. 22-cv-00504 HG-WRP, 2023 WL 1991783, at *4 (Feb. 14, 2023).

In this case, Owens alleges that the University enacted the N95 mask policy to which she objected in late December 2022 and that, *after* she learned of the policy, she complained about it and asked that she be exempted. Moreover, she alleges that, months after enactment of the policy, in March 2023, she complained about the fact that other employees subject to the policy allegedly were not adhering to it. No facts have been alleged (nor do there exist any facts) to support the notion that the objected to policy was enacted by the University in response to Owens' alleged

protected activity - - *i.e.*, her complaints about the University's mask requirement. In other words, there is no allegation of any "but-for" causal link between Owens' alleged protected expression and the adverse employment action. Under such circumstances, the causation element of her disability retaliation claims has not been satisfied.

In *Lundstrom v. Contra Costa Health Servs.*, No. 22-cv-06227-CRB, 2022 WL 17330842 (N.D. Cal. Nov. 29, 2022), the plaintiff's employment was terminated for refusing to comply with her employer's COVID-19 safety policies. The district court dismissed the plaintiff's ADA discrimination and retaliation claims *with prejudice*. As to the plaintiff's retaliation claim, the court stated:

> The core of Lundstrom's retaliation claim is that her required compliance with CCHS's testing, mask-wearing, and COVID-19 vaccination policies violated the ADA because she repeatedly opposed those policies. … However, as Lundstrom and CCHS both note in their pleadings, CCHS's COVID-19 policies were in place before Lundstrom opposed the testing, mask-wearing, and vaccination requirements. … CCHS did not enact those policies in response to Lundstrom's actions. Thus, it is unreasonable to infer that there was a causal connection between Lundstrom's criticism of CCHS's policies and her termination.
>
> … Because CCHS's COVID-19 mitigation and vaccination policies existed before Lundstrom opposed those policies, "it is not reasonable to infer that there was a causal connection between her criticism of the policy and her termination." *See Speaks*, 2022 WL 3448649, at *6. Amendment of Lundstrom's retaliation claim would be futile. … Thus, the Court GRANTS CCHS's motion to dismiss the retaliation claim with prejudice.

*Id.* at *6-7. Similarly, in *Apuzza v. NYU Langone Long Island*, No. 22-CV-7519 (JMA)(JMW), 2023 WL 4471956 (E.D.N.Y. July 11, 2023), the court addressed and granted the defendant's motion for stay of discovery pending a ruling on a motion to dismiss the complaint. The court found that a stay of discovery was warranted because there was a strong showing that the plaintiff's claims were unwarranted. As to the plaintiff's retaliation claim under the ADA, the court stated:

> Plaintiff alleges that after being notified about Defendant's mandatory Covid-19 policy, she arranged to meet with human resource representatives and raised her objections. … This renders Plaintiff's retaliation claim deficient since Defendant's Covid-19 policy, not her protected activity, was the reason for Plaintiff's termination.

*Id.* at *4. *See also Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-2936 (AMD)(JRC), 2023 WL 2163774, at *7 (E.D.N.Y. Feb. 22, 2023) (finding no causal connection because "[t]he

defendant adopted its policies before the plaintiff objected to vaccinations and masking"); *Speaks*, 2022 WL 3448649, at *6 ("[I]t is clear that the policy – which was undisputedly the grounds for Speaks' termination when she chose to remain unvaccinated – was enacted before Speaks spoke up in opposition to the vaccination requirement. Therefore, it is not reasonable to infer that there was a causal connection between her criticism of the policy and her termination."); *Cunningham*, 2023 WL 1991783, at *5 (granting motion to dismiss ADA retaliation claim by employee who opposed employer's vaccination policy because the defendant enacted its COVID-19 policy before the plaintiff notified defendant of his alleged ADA-based opposition to the policy and defendant took no actions deliberately to aim at the plaintiff based on his criticism of the policy).

Plaintiff has failed to allege but-for causation and has failed to allege facts that would support the requisite causal link between her alleged protected conduct and the termination of her employment. For this reason as well, her retaliation claims are subject to dismissal.

### C. Continuing to Keep Plaintiff's Position Open Would Have Caused an Undue Hardship to the University

It is clear that Owens' termination was based on her decision not to come back to work. Owens started working at the University in mid-September 2021 and, by January 1, 2022, was on leave from her job. On April 8, 2022, Owens was advised by the University that it could not extend her leave any further due to the significant undue burden her absence was causing her department. *See* Ex. F. Owens was told that steps to find a replacement for her position would be commenced, during which time the University was willing to keep her employed but that, if a replacement was identified and she was not cleared to come back to work, Owens would not be reinstated into her position. *Id.* In July 2021, Owens was contacted and notified that a replacement for her position had been selected and she was asked about her willingness to return to the University, to which Owens advised that she would not be able to return to her job. *See* Exhibit G. As Owens' termination notice makes clear, she was terminated due to her unwillingness to return to work and the undue burden on the University of maintaining her position for her indefinitely.

At the motion to dismiss stage, if the plaintiff has alleged that she has a disability that is cognizable under the ADA (which Owens has not), a court must then consider the allegations of the complaint to determine whether the plaintiff's requested accommodation is reasonable on its face and whether the requested accommodation imposes an undue burden. *Unger v. Majorca At*

*Via Verde Homeowners Ass'n Inc.,* No. 21-13134, 2022 WL 4542348, at *4 (11th Cir. Sept, 29, 2022). Here, the record is clear that Owens' requested accommodation to wear a cloth mask, which was denied, was not reasonable given the University's reason, which Owens admits in her complaint, for implementation of the N95 mask mandate - - *i.e.*, the surge of COVID-19 infection due to the omicron variant. An employer is not required to provide accommodations that violate the employer's internal policies. *Shepard v. United Parcel Serv., Inc.*, 470 Fed. Appx. 726, 730 (11th Cir. 2012). Moreover, undue hardship exists if the proposed accommodation would either cause or increase safety risks. *Robinson v. Children's Hosp. Boston*, No. CV 14-10263-DJC, 2016 WL 1337255, at *8 (D. Mass. Apr. 5, 2016) (citing E.E.O.C. V. Oak-Rite Mfg. Corp., No. 99-cv-1962-DFH, 2001 WL 1168156, at *10 (S.D. Ind. Aug. 27, 2001). *See also Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 78-79 (2002) (upholding EEOC regulation "that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace). As set forth in Exhibit C, the University granted Owens leave to wear a hypoallergenic N95 mask. The University also granted Owens' request to take medical leave. What the University could not do, however, was maintain indefinitely Owens' employment in a position in which she was unable to fulfill any function because she could not physically work in the Hospital. "[T]he most essential function of any job, and a prerequisite to the performance of other essential functions, is attendance at work, for an employee who is absent can perform no function, essential or non-essential." *Paleologos v. Rehab Consultants, Inc.*, 990 F. Supp. 1460, 1467 (N.D. Ga. 1998).

## V. Conclusion

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Webb-Eaton*, 2013 WL 3835208, at *3. The University respectfully submits that, by requesting relief under the ADA under the circumstances alleged in Plaintiff's Amended Complaint and in the exhibits incorporated therein, Plaintiff asks this Court to abandon both its judicial experience and its common sense. For all of the foregoing reasons, Plaintiff's Amended Complaint should be dismissed *with prejudice*.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive
Suite 750
Miami, Florida 33131
Tel.: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Teresa Ragatz_______________
Eric D. Isicoff
Florida Bar No. 372201
Isicoff@irlaw.com
Teresa Ragatz
Florida Bar No. 545170
Ragatz@irlaw.com
Christopher M. Yannuzzi
Florida Bar No. 92166
Yannuzzi@irlaw.com

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was served via CM.ECF this 11th day of December, 2023, upon the following:

Reid Levin, Esq.
Reid Levin, PLLC
P.O. Box 880682
Boca Raton, Florida 33488
Tel.: (561) 866-6089
E-mail: reid@reidlevinpllc.com

By: /s/ Teresa Ragatz_____________
Teresa Ragatz