**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:23-cv-24565-FAM

SHANNON OWENS, an individual,

Plaintiff,

v.

UNIVERSITY OF MIAMI,

Defendant.

_________________________________________/

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

Plaintiff, Shannon Owens ("Plaintiff or "Ms. Owens"), by and through undersigned counsel, opposes Defendant, University of Miami's ("Defendant," or the "Hospital"), Motion to Dismiss Plaintiff's Amended Complaint, and as grounds thereof, states as follows:

## I. INTRODUCTION

On November 1, 2023, Ms. Owens filed her Complaint for damages against Defendant alleging two counts of discrimination and retaliation under the Florida Civil Rights Act ("FCRA"). (ECF No. 1-3). That same day, Florida's Fourth District Court of Appeal released an inexplicable opinion with potentially severe ramifications for Florida plaintiffs like Ms. Owens, limiting their access to causes of action under the FCRA by adding "notice" requirements found nowhere within the statutory language. *See Belony v. North Broward Hosp. Dist.*, No. 4D2022-3061, 2023 WL 7172299 (Fla. 4th DCA Nov. 1, 2023); *but see Ramos v. Steak N Shake, Inc.*, No. 2D22-3465, 2023 WL 8791666, at *1 (Fla. 2d DCA Dec. 20, 2023) (certifying conflict with *Belony*). In an abundance of caution, Ms. Owens amended her Complaint the following day to include discrimination and retaliation claims under the Americans with Disabilities Act ("ADA") together with her FCRA claims. (ECF No. 1-4). After Defendant timely removed the case to this Court based on Ms. Owens' ADA claims, (ECF No. 1), Defendant filed its Motion to Dismiss Plaintiff's Amended Complaint ("MTD"). (ECF No. 3).

Defendant's MTD attempts to force Plaintiff to prove her case on the pleadings. *But see* S*peaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010). This attempt fails.

To wit, attached to Defendant's MTD are eight (8) exhibits, seven of which are self-serving and unsworn hearsay—the only sworn document Defendant included was sworn to by *Plaintiff*, (ECF No. 3-8)—and each of which Defendant maintains in conclusory fashion are "central to Plaintiff's claims." (*See* ECF No. 3-1–3-8). But a document is only "central to a complaint when it is 'a necessary part of a plaintiff's effort to make out a claim.'" *Kalpakchian v. Bank of Am. Corp.*, 832 F. App'x 579, 583 (11th Cir. 2020) (quoting *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). Said differently, mere reference to a document in a complaint "does not automatically make the [document] central to [Plaintiff's] claims." *See GoPlus Corp. v. Crown Equip. Corp.*, 533 F. Supp. 3d 1344, 1353 (S.D. Ga. 2021). Instead, the Defendant must offer argument as to the centrality. *See id.* This, Defendant does not do.

Indeed, Defendant offers zero argument and zero legal analysis as to why any attached documents—save for Plaintiff's Amended Charge of Discrimination (Exhibit H)—are "central" to Plaintiff's claims. As such, this Court should ignore Defendants' exhibits A, B, C, D, E, F, and G. *See Neurosurgical Consultants of S. Fla., LLC v. United Healthcare Servs., Inc.*, No. 9:22-CV-81727-KAM, 2023 WL 2487257, at *3 (S.D. Fla. Feb. 21, 2023) (declining to incorporate by reference when Defendant failed to develop a record as to its centrality); *c.f. Odom v. Se. Supply Header, LLC*, No. CIV A 09-0147-WS-N, 2009 WL 1658961, at *2 (S.D. Ala. June 11, 2009) (noting a court should not "endeavor to articulate [a party's] legal arguments for them).

Still, the exhibits Defendant attaches cannot overcome Plaintiff's well-pled Amended Complaint. *Infra*. Neither can Defendant's reliance on bad law. Indeed, contained within Defendant's MTD are citations to a litany of cases that are now *bad law*, as every case Defendant cites for the proposition that Plaintiff is not disabled was decided based on law *prior* to the enactment of the ADA Amendments Act of 2008. These, too, should be ignored. *See Lopez-Cruz v. Instituto de Gastroenterologia de P.R.*, 960 F. Supp. 2d 367, 372 n.8 (D.P.R. 2013) (denying defendant's MTD and explaining that after the ADA was amended in 2008, certain episodic impairments—like allergies—are now considered disabilities, and as such, "a more developed record is needed" to determine whether plaintiff has a disability).

That is not all. Throughout Defendant's MTD, Defendant asks this Court to ignore the fundamental, elemental standard governing motions to dismiss—*Plaintiff's facts must be taken as true, and all inferences must be drawn in Plaintiff's favor*—and instead replaces and recolors Plaintiff's well-pled facts in the light most favorable to *Defendant*. (*See, e.g.,* ECF No. 3 at 14 (calling Plaintiff's allegation "patently false"); *id.* at 12–13 (characterizing, without factual basis from Plaintiff's Amended Complaint, that Plaintiff's allergy is "periodic," "episodic," and "temporary"); *id.* at 14 (explaining, without factual basis from Plaintiff's Amended Complaint, that "Owens' episodic allergic reaction to certain allergens she encountered at the Hospital is not a disability protected by the ADA as it does not substantially impair her ability to breathe or to work generally"); *but see Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

All told, Defendant has lodged an all-encompassing Motion for *Summary Judgment* poorly disguised as a Motion to Dismiss. And because Ms. Owens has satisfied her burden at the pleading stage—the stage where all of *Plaintiff's* facts are taken as true—Defendant's MTD must be denied.

## II. STATEMENT OF FACTS

Ms. Owens is an individual living with disabilities. (ECF No. 1-4 ¶ 14). She has a severe contact allergy to latex, irritants, and elastic components, as well as chronic, panic-inducing claustrophobia. (*Id.* ¶ 11). Ms. Owens' contact allergies severely inhibit her ability to breathe. (*Id.* ¶ 12). In fact, her contact allergies are so severe that she keeps an Albuterol Inhaler and two (2) EpiPens nearby to avoid going into anaphylactic shock in the event of an emergency. (*Id.* ¶ 13).

On September 15, 2021, Ms. Owens began working for Defendant as a Unit Secretary at Defendant's UHealth Tower location. (ECF No. 1-4 ¶ 9). As an individual living with disabilities, Ms. Owens sought accommodations from Defendant on two occasions. The first request was informal—Ms. Owens sought a latex-free, cloth facemask—and was granted. (*Id.* ¶¶ 15–17). Later, after Defendant changed its mask policy to N95 masks only, Ms. Owens submitted a formal accommodation, again seeking a latex-free, cloth facemask. (*Id.* ¶ 41).

Ms. Owens' formal ADA accommodation request was denied.[1] (*Id.* ¶ 43). Defendant *did*, however, grant Ms. Owens an alternative accommodation: a hypoallergenic N95 facemask. (*Id.* ¶ 43). In granting Ms. Owens an alternative accommodation, Defendant made one thing clear: **Ms. Owens was regarded as having a disability**. (*See, e.g.,* ECF 3-3 (approving an alternative accommodation under the ADA based on "meetings, the medical documentation from [Ms. Owens'] healthcare provider, and in coordination with [Ms. Owens'] department")).

Defendant had no hypoallergenic N95 facemasks for Ms. Owens to wear. (ECF No. 1-4 ¶ 46). When Ms. Owens returned to work, she was given various non-hypoallergenic masks instead. (*Id.* ¶¶ 45–47). When Ms. Owens voiced her concerns, she was marginalized and ostracized by her peers. (*Id.* ¶¶ 49–50). And when Ms. Owens continued to work through the prolonged exposure to the non-hypoallergenic facemasks, Ms. Owens ended up in the emergency room. (*Id.* ¶¶ 53–55).

After Ms. Owens' hospitalization, Ms. Owens formally complained about her disparate treatment. (*Id.* ¶ 57). The new mask policy required N95s; yet Ms. Owens was singled out for wearing non-N95s, while her similarly situated non-disabled colleagues were allowed to wear non-N95s without penalty. (*Id.* ¶¶ 57–59). After her complaint, the Defendant issued Ms. Owens a

---

[1] Defendant refers to this allegation as "patently false." (*See* ECF No. 3, at 14). As evidence for the falsity of this claim, Defendant attaches "Exhibit C" to its Motion to Dismiss. (*Id.*); *but see, e.g., Dream Defs. v. DeSantis*, 553 F. Supp. 3d 1052, 1095 (N.D. Fla. 2021) ("Defendants' assertion invites this Court to improperly weigh the evidence and look outside the four corners of the Complaint, which this Court cannot do at this juncture.").

written reprimand for failing to show for work. (*Id.* ¶ 61). But Ms. Owens could not show for work due to her disability and the danger of another emergency room hospitalization; after all, if Defendant failed to carry the reasonable accommodate it granted Ms. Owens—a hypoallergenic N95—and Defendant failed to allow Ms. Owens to wear a cloth facemask, then what was Ms. Owens to do? (*See id.* ¶¶ 53–55, 56, 58–60).

The Hospital knew what to do: rather than provide Ms. Owens with the accommodation it had promised, and rather than grant Ms. Owens an accommodation it could fulfill, Defendant coaxed Ms. Owens into taking unpaid personal leave against her wishes. (*Id.* ¶ 60). After Ms. Owens applied for personal leave through September 7, 2022, Defendant then *denied* the very leave it requested Ms. Owens take, instead only allowing Ms. Owens leave through April 8, 2023. (*Id.* ¶¶ 62–64). Defendant characterized the unpaid personal leave as a granted accommodation under the ADA. (*Id.* ¶ 65).

Ultimately, Ms. Owens did not wish to be on personal leave; she wished only for a hypoallergenic mask as an accommodation for her disability. (*Id.* ¶ 66). On July 15, 2022—after Ms. Owens advised Defendant that she could not return to work without a hypoallergenic mask—Ms. Owens was terminated. (*Id.* ¶ 68).

On May 4, 2023, Ms. Owens dual-filed an amended charge of discrimination with the FCHR and the EEOC. (*Id.* ¶ 70). On October 30, 2023, Ms. Owens was issued a Notice of her Right to Sue from the EEOC; and the following day marked 180 days since the filing of Ms. Owens' amended charge of discrimination with the FCHR. (*Id.* ¶ 71–72). Accordingly, Ms. Owens exhausted her administrative remedies pursuant to the FCRA and Title VII, and timely filed suit on November 1, 2023. (*Id.* ¶¶ 71–73).

## III. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss should only be granted if the allegations in the complaint fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[T]he Rule 12(b)(6) standard is highly deferential to a plaintiff." *Daniels v. Sutton*, No. 4:21-CV-10009, 2022 WL 686832, at *11 (S.D. Fla. Jan. 25, 2022), *report and recommendation adopted*, No. 21-10009-CIV, 2022 WL 686434 (S.D. Fla. Mar. 8, 2022). Indeed, when ruling on a motion to dismiss, the Court must "accept[] the factual allegations in the complaint as true and construe[] them in the light most favorable to the Plaintiff." S*peaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citing *Hill v. White*, 321

F.3d 1334, 1335 (11th Cir. 2003)). A court must limit its scope of review to the four corners of the complaint. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228 (11th Cir. 2000). Importantly, a plaintiff "need not prove his case on the pleadings," but instead "must merely provide enough factual material to raise a reasonable inference, and thus a plausible claim." *Speaker*, 623 F.3d at 1386.

## IV. STATEMENT OF GOVERNING LAW

In her First Amended Complaint, Plaintiff brings claims under the Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act ("FCRA"). Title I of the ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "covered entity" includes "an employer," *see* § 12111(2), and "the term 'employer' means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person . . . ." § 12111(5)(A); 29 C.F.R. § 1630.2(e)(1). The FCRA provides, in pertinent part: "It is an unlawful employment practice for an employer . . . to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . handicap . . . ." Fla. Stat. § 760.10(a)(1) (2023). Employees with 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and their agents. *See id.* § 760.02(7).

The ADA and FCRA also protect against retaliation: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Likewise, the FCRA provides, in pertinent part: "It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section . . . ." Fla. Stat. § 760.10(7).

## V. ARGUMENT

Plaintiff's First Amended Complaint advances four counts against Defendant: Counts I and II are for Violations of the FCRA. Count I is based on handicap discrimination, and Count II is based on retaliation. Counts III and IV are for Violations of Title I of the ADA. Count III is based on disability discrimination, and Count IV is based on retaliation. For the reasons below, and taking

Plaintiff's well-pleaded claims as true and drawing all reasonable inferences in favor of Plaintiff, this Court should DENY Defendants' Motion to Dismiss.

**A. Plaintiff Exhausted her Administrative Remedies Under the FCRA.**

Defendant alleges Ms. Owens failed to exhaust her administrative remedies, and as a result, Ms. Owens' FCRA claims must be dismissed. For this proposition, Defendant cites the hot-off-the-presses *Belony v. North Broward Hospital Dist.*, No. 4D2022-3061, 2023 WL 7172299 (Fla. 4th DCA Nov. 1, 2023). But *Belony* is wrongly decided, its statutory interpretation is absurd, and it is no longer controlling law in this Court.

In *Belony,* the Fourth District held—incredibly—that plaintiff failed to put defendant on notice of a potential FCRA claim because the charge of discrimination—which was dual filed with the Florida Commission on Human Relations ("FCHR")—specifically alleged *only* a violation of "Title VII of the Civil Rights Act of 1964" and not the FCRA. *Id.* at *2. In so doing, the Fourth District not only rendered the work-sharing agreement between the EEOC and the FCHR superfluous, but the holding also belies logic: if a charging party lists Title VII only, then the employer apparently does not have notice of possible violations of Florida law; yet if a charging party lists *no* statute in the body of the charge, according to the Fourth, the employer *is* on notice of a possible violation of Florida law. *Id.* (explaining that a discrimination charge is only required to reference Florida law when it also alleges a violation of federal law). Said differently, the Fourth held that if a charging party fails to specifically identify the Florida law in the body of the charge, the employer is not on notice—unless the charging party *also* fails to identify the federal law, in which case the employer *is* on notice. *Id.* Setting aside for a moment the fact that this new "notice" requirement is without basis in the statutory language, *see* Fla. Stat. § 760.11, the Fourth District's logic is an absurdity. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1188 (11th Cir. 1997) ("[S]tatutory language should not be applied literally if doing so would produce an absurd result.").

Notwithstanding the absurdity of the Fourth District's holding—a holding which further ignores the mode, manner, and reality in which most claimants file their charges,[2] and inexplicably

[2] Unrepresented claimants submit charges through interviews with staff members from the EEOC. *See How to File a Charge of Employment Discrimination*, EEOC, https://www.eeoc.gov/how-file-charge-employment-discrimination. It is thus the EEOC staff member—not the unrepresented claimant—who determines what statutes, if any, are written in the body of the charge. *See id.* Given that the EEOC staff member works for the federal agency and *not* the FCHR, it is unsurprising that the EEOC representative would fill in a charge by citing the

ignores the Florida Supreme Court's mandate that the FCRA be liberally construed "to preserve and promote access to the remedy intended by the Legislature"[3]—as Defendant explains in its reliance on *Belony*, "in the absence of contrary authority . . . this Court is bound by decisions of Florida's intermediate appellate courts on issues of Florida law." [ECF No. 3 at 9].

Alas, the contrary authority has arrived, and this Court is no longer bound by *Belony*. On December 20, 2023, the Second District Court of Appeals certified conflict with *Belony* in *Ramos v. Steak N Shake, Inc.*, No. 2D22-3465, 2023 WL 8791666, at *1 (Fla. 2d DCA Dec. 20, 2023). There, the Second District engaged in an *actual* plain meaning statutory interpretation and held:

> **If the legislature intended for the statutory language in section 760.11 to require that the aggrieved party specifically allege in the complaint that his or her claims were under the FCRA, it could have said so, but it did not. And in finding that Ramos failed to exhaust his administrative remedies by failing to specifically allege in his charge of discrimination that his claims were under the FCRA, the trial court added a requirement that is not found anywhere within the statute and contravenes the legislature's clear intent that the statute be interpreted liberally.**

*Ramos*, 2023 WL 8791666, at *3 (emphasis added); *see also Joshua*, 768 So. 2d at 435 ("Like Title VII, chapter 760 is remedial and requires a liberal construction to preserve and promote access to the remedy intended by the Legislature.").

Notwithstanding *Belony's* absurd construction, its failure to construe the FCRA liberally in favor of access to the remedial purposes of the statute, and the no-longer-controlling nature of its holding, Defendant is wrong again: Plaintiff did her part by placing Defendant on notice of possible FCRA claims in Plaintiff's Rebuttal to Defendant's Position Statement submitted to the EEOC. To wit, on September 15, 2023, Plaintiff submitted her rebuttal to the Senior Federal Investigator in charge of investigating her claim. There, Plaintiff explained, "the allegations of Ms. Owen's initial charge, standing alone, establish a prima facie claim for several violations of the ADA the Florida Civil Rights Act ("FCRA")." The rebuttal was not labeled "confidential." Thus, to the extent Defendant maintains it was not on notice—and that the absurd finding in *Belony* somehow controls—Plaintiff submits there is a factual dispute that precludes the granting of

---

federal statute with which they are familiar, and *not* the Florida statute with which they are *not* familiar. To punish charging parties for the EEOC staff member's actions—especially when the EEOC website specifically notes "you don't have to hire a lawyer to file a charge"—is absurd.

[3] *Joshua v. City of Gainesville*, 768 So. 2d 432, 435 (Fla. 2000).

Defendants MTD. *Compare Speake*, 623 F.3d at 1379 (explaining the court must accept all factual allegations "as true and construe[] them in the light most favorable to the Plaintiff"), *with* (ECF No. 1-4 ¶ 72 ("Owens has exhausted her administrative remedies pursuant to section 760.11, *Florida Statutes*, and can thus bring discrimination and retaliation claims under the Florida Civil Rights Act.")).

Accordingly, Defendant's MTD must be denied.[4]

**B. <u>Plaintiff's Amended Complaint States a Claim for Disability Discrimination Under Both the ADA and FCRA.</u>**

In its MTD, Defendant claims Plaintiff's Amended Complaint "fails to contain factual allegations sufficient to satisfy" a *prima facie* case of disability discrimination because: (i) Plaintiff's "episodic allergic reaction to certain allergens she encountered at the Hospital is not a disability protected by the ADA as it does not substantially impair her ability to breathe or to work generally," (ECF No. 3, at 14); and (ii) Plaintiff does not have a "disability within the meaning of the ADA," and therefore she "was not entitled to any of the protections of the ADA," *i.e.*, a reasonable accommodation. (*Id.* at 15). Defendant is wrong.

"To establish a prima facie case of discrimination under [both] the ADA [and the FCRA],[5] a plaintiff must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability." *Dykstra v. Fla. Foreclosure Att'ys, PLLC*, 183 F. Supp. 3d 1222, 1230 (S.D. Fla. 2016) (quoting *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (per curiam)). For the reasons explained below, Plaintiff has satisfied her burden at this stage and Defendant's MTD must be dismissed.

***i. Plaintiff Suffers from a Disability as Defined Under the ADA.***

"Under the ADA, a 'disability' is '(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Dykstra*, 183 F. Supp. 3d at 1230 (quoting 42 U.S.C. § 12102(1); *see also* 29 C.F.R. § 1630.2(g)(1).[6] Plaintiff satisfies all three.

---

[4] To the extent this Court elects to dismiss Plaintiff's ADA claims, *infra*, Plaintiff respectfully requests this Court remand Plaintiff's FCRA counts back to the Miami-Dade Circuit Court to allow the state court to rule on this disputed issue under Florida law.

[5] "As applied to discrimination based on a handicap, the FCRA is construed in conformity with the [ADA]." *Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 925 (Fla. 4th DCA 2007).

[6] "Handicap" or disability has the same definition under the FCRA as it does under the ADA. *See Ross v. Jim Adams Ford, Inc.*, 871 So. 2d 313, 314 (Fla. 2d DCA 2006).

To begin, Plaintiff has properly alleged she has both a physical and mental impairment. Pursuant to 29 C.F.R. § 1630.2(h)(1), physical impairment is defined broadly, and includes: "Any physiological disorder or condition . . . affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." *Id.* Likewise, mental impairment is defined broadly as well, and includes: "[a]ny mental or psychological disorder . . . ." *Id.* § 1630.2(h)(2). Ms. Owens' well-pled allegations that she "has a severe contact allergy" that "severely inhibits her ability to breathe," fall firmly within the "immune," "respiratory," and "skin" categories, while Ms. Owens' "chronic, panic-inducing claustrophobia," falls squarely within the "psychological disorder" category. (ECF No. 1-4 ¶¶ 11–12); *see* 29 C.F.R. § 1630.2(h)(1)–(2).

Plaintiff further alleges her impairment substantially limits one or more major life activities. "Breathing and working are major life activities under the ADA according to EEOC regulations." *Brown v. Sch. Bd. of Broward Cnty., Fla.*, No. 08-61592-CIV, 2009 WL 10667580, at *6 (S.D. Fla. Nov. 6, 2009) (citing 29 C.F.R. § 1630.2(i)). Indeed, Plaintiff alleged not only that her allergy "severely inhibits her ability to breathe," but also that her impairment affected her at work, as it "is so severe that Owens was compelled to keep an Albuterol Inhaler and two (2) EpiPens in her work locker to avoid going into anaphylactic shock should an emergency arise." (ECF No. 1-4 ¶¶12–13). Taking Plaintiff's allegations as true, as this Court must, she has properly alleged she suffers from a disability.

Plaintiff also satisfies *both* a "record of such an impairment" *and* being "regarded as having such an impairment." Indeed, Plaintiff disclosed her disabilities to both her supervisor and HR. (*Id.* ¶¶ 15, 41). Plaintiff provided medical documentation from her doctor on multiple occasions. (*Id.* ¶¶ 16, 41). Plaintiff was granted both informal *and* formal accommodations under the ADA. (*Id.* ¶¶ 16, 43). And on February 27, 2022, during a shift at the Hospital, Plaintiff was admitted to the emergency room due to her disability. (*Id.* ¶¶ 53–55).

In fact, in Defendant's MTD, *Defendant* attaches *three* separate records—Exhibits C, F, and G—which each state, on different dates and drafted by two different employees of Defendant, that Defendant has relied on medical records submitted by Plaintiff's health care provider and is granting Plaintiff accommodations under the ADA. (*See* ECF No. 3-3 (explaining that Ms. Owens' request for accommodations "must be evaluated in accordance with the Americans with

Disabilities Act," and <u>*approving*</u> an "alternative accommodation" based on, *inter alia*, "the medical documentation from [Ms. Owens'] healthcare provider"); ECF No. 3-6 (explaining to Ms. Owens "that your personal leave of absence has been granted as an accommodation under the Americans with Disabilities Act" because of Ms. Owens' "medical condition"), *and* ECF No. 3-7 ("You were provided with a leave of absence as a reasonable workplace accommodation under the Americans with Disabilities Act ("ADA")."). Defendant's reliance on Ms. Owens' medical records and subsequent granting of accommodations makes clear: at bottom, Ms. Owens was "regarded as" having a disability.

To the extent Defendant disagrees that Plaintiff has a disability, (ECF No. 3, at 11–14), two issues warrant mention. *First*, Defendant attached three exhibits to its MTD, which expressly contradict its view that Plaintiff has not properly alleged a disability. (*See* ECF Nos. 3-3, 3-6, 3-7). Defendant's argument should therefore be discarded. *See Int'l Bhd. of Teamsters v. Amerijet Int'l, Inc.*, 932 F. Supp. 2d 1336, 1345 (S.D. Fla. 2013) (explaining that the well-settled rule that when exhibits contradict allegations, the exhibits control, "applies even to exhibits that are attached to a motion to dismiss"). *Second*, Defendant cites an overwhelming amount of case law—while simultaneously construing Ms. Owens' allegations in Defendant's favor—for the proposition that Plaintiff does *not* have a disability. There are three problems with Defendant's stance.

*First*, Defendant cites seven cases for the proposition that Defendant does not have a disability covered by the ADA. (ECF No. 3, at 11–14). But there is one glaring problem: six of these cases were decided at summary judgment.[7] The problem with citation to summary judgment authority at the motion to dismiss stage—aside from the different standards, the affidavits and sworn testimony, and the evidence—is evident: a more developed record is *required* to determine the extent of Ms. Owens' disability. *See Lopez-Cruz v. Instituto de Gastroenterologia de P.R.*, 960 F. Supp. 2d 367, 372 n.8 (D.P.R. 2013). Thus, to the extent these *summary judgment* cases all found the plaintiff did not suffer from a disability, they do not apply here to Defendant's MTD.

---

[7] These cases include: *Watson v. Hughston Sports Med. Hosp.*, 231 F. Supp. 2d 1344 (M.D. Ga. 2002) (summary judgment); *McLorn v. Community Health Servs.*, 456 F. Supp. 2d 991 (S.D. Ill. 2006) (summary judgment); *Slade v. Hershey Co.*, No. 1:09-CV-00541, 2011 WL 13350910, 2011 WL 13350910 (M.D. Pa. Apr. 15, 2011) (summary judgment); *Brown v. Sch. Bd. of Broward Cnty.*, Fla., No. 08-61592, 2009 WL 10667580 (S.D. Fla. Nov. 6, 2009) (summary judgment); *Kristofor v. Schnibben*, No. 02 C 1859, 2003 WL 685819 (N.D. Ill. Feb. 26, 2003) (summary judgment); *Chancellor v. Comans*, No. 1:04-cv-1290, 917-CAM, 2007 WL 9701366, at *4 (N.D. Ga. Aug. 16, 2007) (summary judgment).

*Second*, of the seven cases, five cited by Defendant—including *Webb v. Clyde L. Choate Mental Health & Dev. Ctr.*, 230 F.3d 991 (7th Cir. 2000), the lone case decided at the motion to dismiss stage—were decided *before* the ADA Amendments Act of 2008 ("ADAAA") became effective on January 1, 2009. The two remaining cases cited by Defendant—*Slade* and *Brown*—although decided post-January 1, 2009, both involved operative facts that occurred *prior* to the enactment of the ADAAA. Accordingly, they were analyzed under the old ADA. *C.f. Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1267 (11th Cir. 2014) ("Because the critical events . . . took place after the ADAAA went into effect, we apply the post-ADAAA version").

In short, because Defendant has relied on *pre-ADAAA* cases, all seven cases cited by Defendant are no longer good law. *See Lloyd v. Hous. Auth. of the City of Montgomery, Ala.*, 857 F. Supp. 2d 1252, 1263 (M.D. Ala. 2012) (explaining that cases like *Webb* are no longer good law after the ADAAA was enacted).

In *Lopez-Cruz*, the District of Puerto Rico cited several cases which held that "when the individual is exposed to an allergen at work" that individual "does not suffer a disability." *Id.* at 372 n.8. In denying the Defendant's motion to dismiss, the Court expressly rejected these cases:

> Finally, the aforementioned cases were decided prior to the ADA being amended by the ADA Amendments Act of 2008 ("ADAA"). Whereas the Supreme Court has previously concluded that the ADA's disability requirement must be "interpreted strictly to create[] a demanding standard," *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002), the ADAA was designed to enlarge the scope of recognized disabilities. *Faiola v. APCO Graphics, Inc.*, 629 F.3d 43, 47 n. 4 (1st Cir. 2010) ("The ADA Amendments Act of 2008 [] has since expanded the definition of 'disability' from that laid out in *Toyota*."); [*Gil v.*] *Vortex, LLC*, 697 F. Supp. 2d 234, 237–39 (D. Mass. 2010). Specifically, the ADAA provides that the disability inquiry is to be made without consideration of "the ameliorative effects of mitigating measures," 42 U.S.C. § 12102(4)(E)(I), and that **an impairment occurring episodically may be considered a disability if it substantially limits a major life activity when active**, 42 U.S.C. § 12102(4)(D).

*Lopez-Cruz*, 960 F. Supp. 2d at 372 n.8; *see also Caporicci v. Chipotle Mexican Grill, Inc.*, 189 F. Supp. 3d 1314 (M.D. Fla. 2016), *aff'd*, 729 F. App'x 812 (11th Cir. 2018).

All told, at the pleading stage, Ms. Owens has done her job of establishing she suffered from a disability. Defendant's arguments otherwise—which rely on both bad law *and* established records developed at the summary judgment stage—*must* be rejected.

***ii. Plaintiff is a Qualified Individual.***

In her Amended Complaint, Ms. Owens properly alleged she is a qualified individual: "Plaintiff is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that Plaintiff held with Defendant. She is therefore a qualified individual with a disability." (ECF No. 1-4 ¶ 105; *id.* ¶¶ 14, 77); *see also Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017). Defendant does not dispute this element; as such, Ms. Owens has met her burden at this stage.

***iii. Defendant was Subjected to Unlawful Discrimination Because of her Disability.***

In cases of disability discrimination under the ADA and the FCRA, "[a] plaintiff can proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations." *Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009). Taking Plaintiff's well-pled facts as true at this stage, as this court must, Plaintiff has stated a claim under two such theories: failure to make reasonable accommodations *and* disparate treatment.

*First*, failure to make reasonable accommodations. Defendant argues Ms. Owens is not entitled to reasonable accommodations under the ADA because, according to Defendant, "it is clear that the impairment described by Owens in her Amended Complaint is not a disability within the meaning of the ADA." (ECF No. 3, at 15). But as discussed, *supra*, "[g]iven the new standards and definitions put in place by the ADAAA," the impairment described by Owens in her Amended Complaint *is*, in fact, enough "to present a prima facie case on [her] ADA and FCRA disability claims." *See Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1270 (11th Cir. 2014).

Defendant also laments that Ms. Owens' allegation that the Defendant "failed to provide her a reasonable accommodation . . . . is patently false." (ECF No. 3, at 14). Of course, as detailed in Ms. Owens' Amended Complaint, Defendant's failure was not a failure *on paper*; it was a failure in practice. (ECF No. 1-4 ¶¶ 43, 46 (alleging Defendant "granted Owens an Alternative accommodation," but upon her return to work, "the Hospital had no hypoallergenic N95s for Owens to wear); *id.* ¶ 60 (alleging "rather than provide Owens with the accommodation it had promised, the Hospital instead coaxed Owens into taking unpaid personal leave")).

In any event, this Court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In so doing, Ms. Owens has satisfied her burden at the pleading stage by stating a claim for failure to make reasonable accommodations.

*Second*, disparate treatment. Defendant states Plaintiff cannot bring a disparate treatment claim because she failed "to identify in her complaint those non-disabled comparators who she contends were treated more favorably than she was" and that she is *required* to allege facts showing "her comparators were similarly situated to her in all material respects." (ECF No. 3, at 15). But that is not the law in this Circuit.

Indeed, Defendant searches far and wide for the proposition that Plaintiff must, at the pleading stage, satisfy the *McDonnell Douglas* evidentiary framework.[8] (*See* ECF No. 3, at 15 (citing *Novick v. Vill. of Wappingers Falls*, 376 F. Supp. 3d 318, 341 (S.D.N.Y. 2019) (relying on *McDonnell Douglas*))). This is wrong for three reasons.

*Number one*, the *McDonell Douglas* Framework—which requires a plaintiff to identify a similarly situated comparator—does not apply at the motion to dismiss stage. *E.g.*, *Powers v. Sec'y, U.S. Homeland Sec.*, 846 F. App'x 754, 758 (11th Cir. 2021) ("Both the Supreme Court and this Court have held that it is error to require an employment discrimination plaintiff to plead the elements of a *McDonnell Douglas* prima facie case at the pleading stage.").

*Number two*, failure to identify a similarly situated comparator *at any stage* does not doom Ms. Owens' claim, as there are other methods to prove discrimination, including mixed-motive, *id.*, and the convincing mosaic standard. *See Red Door Asian Bistro v. City of Fort Lauderdale*, No. 22-11489, 2023 WL 5606088, at *8 (11th Cir. Aug. 30, 2023) (quoting *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) ("[A] plaintiff will always survive summary judgment if he presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination.").

*Number three*, in a weeks-young opinion, the Eleventh Circuit expressly disapproved of litigants' (and District Courts') overreliance on *McDonnell Douglas*, explaining that *McDonnell Douglas* is an *evidentiary* framework—"a procedural device, designed only to establish an order of proof and production," and "*not* a substantive standard of liability"—that was never meant to

[8] Although the Defendant does not specifically cite to *McDonnell Douglas*, the Defendant's argument—that Plaintiff must identify a specific, similarly situated comparator—is a fundamental element utilized in the employment discrimination context under *McDonnell Douglas*. *See Lewis v. City of Union City*, 918 F.3d 1213, 1217 (11th Cir. 2019) ("Under [the *McDonnell Douglas*] framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by proving, among other things, that she was treated differently from another "similarly situated" individual—in court-speak, a "comparator.").

establish "an independent standard of liability" or specify a "set of elements that the employee must prove . . . ." *Tynes v. Florida Department of Juvenile Justice*, No. 21-13245, 2023 WL 8593114, at *1, 4 (11th Cir. Dec. 12, 2023) (emphasis added). In *Tynes*, the Eleventh Circuit continued, describing the "convincing mosaic" standard as "the ultimate inquiry in a discrimination lawsuit." *Id.* at *5.

Accordingly, all Ms. Owens needs to do is allege the third element of her disability discrimination claim: that she was subjected to unlawful discrimination due to her disability. This, Ms. Owens did: she alleged she was "made fun of, ostracized, and made to feel like a burden," (ECF No. 1-4 ¶ 50); she alleged other CANs and RN's were allowed to wear unapproved masks but she was not, (*id.* ¶ 57); she alleged she was forced to take unpaid leave against her will, (*id.* ¶ 60); and she alleged she was terminated on account of her disability, (*id.* ¶ 68). Taking Ms. Owens' well-pled facts as true, as this court must at the pleading stage, Ms. Owens has satisfied her burden of stating a claim for disparate treatment.

**C. <u>Plaintiff's Amended Complaint States a Claim for Retaliation Under the FCRA and ADA.</u>**

In Counts II and IV, Plaintiff brings retaliation claims under the FCRA and ADA. In its MTD, Defendant argues the retaliation claims should be dismissed because (i) Plaintiff's belief that her opposition to Defendant's policy constituted protected conduct under the ADA was "not objectively reasonable as a matter of law," (ECF No. 3, at 16); (ii) "Plaintiff has failed to allege but-for causation and has failed to allege facts that would support the requisite causal link between her alleged protected conduct and the termination of her employment," (*id.* at 19); and (iii) even if Plaintiff alleged a disability cognizable under the ADA, a court must determine "whether the plaintiff's requested accommodation is reasonable on its face and whether the requested accommodation imposes an undue burden" on the Defendant. (*Id.*). Defendant is wrong.

"The anti-retaliation provision of the ADA prohibits discrimination against an individual because that individual 'opposed *any* act or practice made unlawful by [the ADA] . . . ." *Higdon v. Jackson*, 393 F.3d 1211, 1218 (11th Cir. 2004) (quoting 42 U.S.C. § 12203(a)). "Title V further prohibits coercion, intimidation, threats, or interference with an individual's exercise of his rights under the ADA." *Washington v. Sch. Bd. of Hillsborough Cnty.*, No. 808-CV-2023-T-33MAP, 2009 WL 4042938, at *6 (M.D. Fla. Nov. 23, 2009).

"To establish a prima facie case of retaliation under the ADA, 'a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse action; and (3) the

adverse action was causally related to the protected expression.'" *Higdon*, 393 F.3d at 1219 (quoting *Shotz v. City of Plantation*, 344 F.3d 1161, 1181) (11th Cir. 2003)). For the reasons discussed below, Plaintiff has properly alleged the requisite elements in her Amended Complaint.

***i. Plaintiff Engaged in Statutorily Protected Conduct.***

In its MTD, Defendant states Ms. Owens's retaliation claims are "incredibly vague and lack any factual detail." (ECF No. 3, at 16). Defendant then states that, as a threshold matter, Ms. Owens's belief that opposing Defendant's new mask policy constituted protected conduct under the ADA "was not objectively reasonable as a matter of law." (*Id.*). But contrary to Defendant's assertion, Ms. Owens pleads sufficient facts supporting her claim of retaliation.

"To establish that a plaintiff engaged in statutorily protected expression . . . a plaintiff must show that she 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).

Ms. Owens engaged in several instances of statutorily protected conduct. First, Ms. Owens "voiced her concerns" about how Defendant's mask policy was impairing her disability. (ECF No. 1-4 ¶ 49). Next, she contacted her supervisor to complain that she could not return to work without the hypoallergenic facemask she was granted pursuant to her reasonable accommodation under the ADA. (*Id.* ¶ 56). In March 2022, Ms. Owens complained to Dr. Lamar that some of Ms. Owens's colleagues were transgressing the Defendant's new mask policy. (*Id.* ¶ 57). There, Ms. Owens made clear: "she was being singled out in ways her similarly situated non-disabled colleagues were not." (*Id.* ¶¶ 58–59). And in July 2022, Ms. Owens advised the Hospital she could not return to work without a hypoallergenic mask. (*Id.* ¶¶ 68).

All told, Ms. Owens displayed a reasonable belief that Defendant was unlawfully engaging in employment discrimination on the basis of Ms. Owens' disability, both through its failure to accommodate, (*id.* ¶¶ 49, 56, 68), *and* through the disparate treatment of Ms. Owens compared to some of her colleagues, (*id.* ¶¶ 57–59). As such, Plaintiff has satisfied her burden as to this element.

***ii. Plaintiff Alleged an Adverse Employment Action***

In *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), the Supreme Court articulated a new standard for "adverse actions" in the retaliation context. Indeed, as the Eleventh Circuit recently explained: the standard for adverse action in retaliation claims is "decidedly more relaxed" than the standard utilized in the discrimination context. *See Laster v. Georgia Dep't of Corr.*, No. 22-13390, 2023 WL 5927140, at *2 (11th Cir. Sept. 12, 2023) (quoting *Crawford v.*

*Carroll*, 529 F. 3d 961, 973 (11th Cir. 2008)). After quoting the new controlling *Burlington* standard—what "might have dissuaded a reasonable [person] from making or supporting a charge of discrimination," *Burlington N. & Santa Fe Ry. Co*, 548 U.S. at 68—the Eleventh Circuit elaborated: "the same action could satisfy the adverse action element of a retaliation claim but not a discrimination claim." *Laster*, 2023 WL 5927140, at *2.

Defendant concedes Plaintiff suffered an adverse employment action when Defendant terminated her. (ECF No. 3, at 17). But Ms. Owens suffered multiple adverse employment actions even prior to her termination that satisfy the new standard articulated in *Burlington*: she was marginalized and ostracized by her peers, (ECF No. 1-4 ¶¶ 49–50); she was issued a written reprimand for failing to show for work, (*id.* ¶ 61); and she was coaxed into taking unpaid personal leave against her wishes, (*id.* ¶ 60). Because each of these actions taken against Ms. Owens might have dissuaded a reasonable person from engaging in a protected activity, Ms. Owens has satisfied her burden at this stage.

***iii. Plaintiff Alleged a Causal Link Between Protected Conduct and Termination.***

Defendant maintains Ms. Owens failed to plead "her termination was causally related to alleged protected conduct." (ECF No. 3, at 17). But Defendant is off base. To begin, Defendant fails to identify the multiple instances of Ms. Owens' protected activity. *Supra*. To continue, Defendant fails to identify the multiple instances of the adverse actions taken against Ms. Owens. *Supra*. To conclude, it is little wonder Defendant failed to identify a causal connection. We clarify.

Close temporal proximity between the protected activity and the adverse action "is sufficient circumstantial evidence" to survive both a motion to dismiss *and* summary judgment. *See Brungart v. BellSouth T'comm's, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

In February 2022, just *days* after Ms. Owens "voiced her concerns" about how Defendant's mask policy was impairing her disability, Ms. Owens was marginalized and ostracized by her peers. (ECF No. 1-4 ¶¶ 49–50). In March 2022, just *days* after Ms. Owens (i) first complained to her supervisor that she could not return to work without a hypoallergenic facemask she was granted; and (ii) next complained to Dr. Lamar that she was not being given accommodations and that she was being singled out, (*id.* ¶¶ 56–59), Ms. Owens was coaxed into taking unpaid personal leave against her wishes *and* issued a written reprimand, (*id.* ¶¶ 60–62). And in July 2022, just *days* after Ms. Owens advised the Hospital she could not return to work without a hypoallergenic mask, she was terminated. (*Id.* ¶ 68).

All told, Ms. Owens has sufficiently satisfied her burden at this stage that the adverse actions taken against her were in close temporal proximity to her protected activities. Accordingly, Defendant's MTD as to the retaliation claims must be denied.

***iv. Plaintiff's Accommodation Request was Reasonable.***

Defendant's final argument in favor of dismissal—one that is curiously couched within the body of Defendant's retaliation section—is that Defendant terminated Plaintiff "due to her unwillingness to return to work and the undue burden on the University of maintaining her position for her indefinitely." (ECF No. 3, at 19). Defendant is misinformed on the law.

"An employer must provide a reasonable accommodation for an employee with a known disability unless such an accommodation would result in undue hardship to the employer." *Scott v. Postmaster Gen. United States Postal Serv.*, 818 F. App'x 914, 917 (11th Cir. 2020) (citing *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000)). "[E]stablishing that a reasonable accommodation exists is a part of an ADA plaintiff's case, *whereas undue hardship is an affirmative defense to be pled and proven by an ADA defendant*." *Willis v. Conopco, Inc.*, 108 F.3d 282, 286 (11th Cir. 1997) (emphasis added). "An accommodation is reasonable, however, only if it allows the employee to perform the essential functions of the job." *Scott*, 818 F. App'x at 917.

Consistent with the ADA, Ms. Owens, several times throughout her Amended Complaint, established that a reasonable accommodation to her disability exists. (ECF No. 1-4 ¶¶ 16, 24, 31, 35–39, 41, 41–43, 49, 51, 52, 56, 57, 60, 61, 67, 68). Although Defendant denied Ms. Owens's first accommodation request to wear fabric masks, it ultimately granted her "an Alternative accommodation to wear 'a Harley NIOSH Approved Hypoallergenic N95 Particulate Respirator Mask.'" (*Id.* ¶ 43). But when Ms. Owens returned to work, Defendant failed to provide her with the alternative accommodation it had granted. (*Id.* ¶ 46). Given that an accommodation is *prima facie* reasonable "if it allows the employee to perform the essential functions of the job," Defendant's granted alternative accommodation makes one thing clear: a hypoallergenic facemask was a reasonable accommodation as it would have allowed Ms. Owens to perform the essential functions of her job. *See Scott*, 818 F. App'x at 917. Said differently, Defendant would not have granted Ms. Owens's alternative accommodation if Defendant had not already determined such accommodation was reasonable.

The inquiry ends here. Although Defendant cites a Massachusetts case for the proposition that an "undue hardship exists if the proposed accommodation would either cause or increase

safety risks," (ECF No. 3, at 20) (citing *Robinson v. Children's Hosp. Boston*, No. CV 14-10263-DJC, 2016 WL 1337255, at *8 (D. Mass. Apr. 5, 2016)), "undue hardship is an affirmative defense to be pled and proven by an ADA defendant." *Willis*, 108 F.3d at 286. At this stage—taking Plaintiff's well-pled facts as true and drawing all inferences in Plaintiff's favor—Plaintiff has satisfied her burden of making out plausible claims for relief under the ADA and FCRA sufficient to survive Defendant's MTD.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff has met her burden at the pleading stage, and this Court must, as a matter of law, deny Defendant's Motion to Dismiss in its entirety.

Dated this 27th day of December, 2023.

By: */s/ Reid Levin*
Reid Levin, Esq.
Florida Bar No. 1038933
**Reid Levin, PLLC**
P.O. Box 880682
Boca Raton, Florida 33488
Phone: (216) 513-1335
Email: reid@reidlevinpllc.com
***Attorney for Plaintiff Shannon Owens***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of December 2023, a true and correct copy of the foregoing has been filed with this Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Reid Levin*
Reid Levin, Esq.